IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

            Plaintiff,

      vs.                          **Case No. 08-40031-01-RDR**

MICHAEL NORRIS SCHMIDT,

            Defendant.

_____

### MEMORANDUM AND ORDER

      This matter is presently before the court upon several
pretrial motions filed by the defendant.  The court has conducted
a hearing and is now prepared to rule.

      The defendant is charged with eight crimes involving firearms.
He is charged with three counts of possession of a firearm by a
felon [Counts 1, 4 and 7], three counts of possession of a firearm
by an unlawful user of controlled substances [Counts 2, 5 and 8],
one count of possession of a stolen firearm [Count 3], and one
count of possession of an illegal firearm [Count 6].  The various
charges arise from incidents on three separate dates:  November 27,
2007 [Counts 1, 2 and 3], December 27, 2007 [Counts 4, 5 and 6] and
March 30, 2008 [Counts 7 and 8].

      The defendant has filed three motions:  (1) motion to suppress
evidence seized on November 27, 2007; (2) motion to suppress
evidence seized on March 30, 2008; and (3) motion to elect.  At the
hearing, the parties agreed that the motion to suppress evidence

seized on November 27, 2007 and the motion to elect could be considered on the briefs.  The court heard evidence on the motion to suppress evidence seized on March 30, 2008.

**MOTION TO SUPPRESS EVIDENCE SEIZED ON NOVEMBER 27, 2007**

The defendant seeks to suppress all evidence seized during the search of the residence and outbuildings at 33154 Old Highway K-10, Alma, Kansas, on November 27, 2007 pursuant to a search warrant. The defendant contends that the search warrant was not supported by a showing of probable cause.  The government acknowledges that the warrant was based upon an anonymous tip, but contends that sufficient corroboration was undertaken by law enforcement to support the issuance of a search warrant.

Law enforcement authorities in Wabaunsee County were investigating a rash of burglaries in rural Wabaunsee County in late November of 2007.  They received an anonymous tip via the Crime Stoppers tip line.  The tipster indicated that he/she had been to a farmhouse in rural Wabaunsee County identified as the "Old Simon place."  He/she indicated that there were three people living there:  Mike, Steve and "Kat."  He/she did not know their last names.  He/she stated that he/she had been there on several occasions.  He/she described the occupants as white between the ages of 30 and 45.  He/she provided some additional information about their occupations.  He/she noted that Mike did not have a known job, but worked for several contractors for cash and used

stolen tools in that employment.  He/she indicated that Mike and
Steve were hunters and have weapons on the property.  He/she stated
that he/she had seen stolen property at that residence and
specifically described a power drill that he/she thought had been
stolen from a specific individual in Alta Vista, Kansas.  Law
enforcement corroborated that a power drill had indeed been stolen
from this individual in Alta Vista.  The description of the power
drill matched the one given by the tipster.  A search warrant was
prepared and a search warrant was issued.

A search warrant must be supported by probable cause,
requiring "more than mere suspicion but less evidence than is
necessary to convict." United States v. Burns, 624 F.2d 95, 99
(10th Cir. 1980). "Probable cause undoubtedly requires a nexus
between suspected criminal activity and the place to be searched."
United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990).
An affidavit in support of a search warrant must contain facts
sufficient to lead a prudent person to believe that a search would
uncover contraband or evidence of criminal activity.  See United
States v. Rowland, 145 F.3d 1194, 1204 (10th Cir. 1998).

The Supreme Court has adopted a "totality of the
circumstances" test to determine when information from a
confidential informant or an anonymous tip can establish probable
cause. Illinois v. Gates, 462 U.S. 213, 238 (1983).  The Court has
explained that an informant's "'veracity,' 'reliability,' and

'basis of knowledge' are all highly relevant in determining the value of his report." Id. at 230. In Gates, the information came from an anonymous letter which provided no indication of the informant's veracity, reliability, or basis of knowledge. The Court held that the anonymous tip, standing alone, was insufficient to establish probable cause. Id. at 227. However, it explained that "a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. at 233. The Court found that the anonymous tip in Gates was sufficient to establish probable cause because it "contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties not easily predicted." Id. at 245.

In Alabama v. White, 496 U.S. 325 (1990), the Court addressed the standard for determining when an anonymous tip can provide "reasonable suspicion" to justify an investigatory stop. The Court recognized that "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" Florida v. J.L., 529 U.S. 266, 270 (2000) (quoting White, 496 U.S. at 327). In White, the Court deemed an anonymous tip sufficiently reliable to justify an investigatory stop because it was highly detailed and police independently corroborated the informant's

4

predictions regarding the suspect's future activity. Id. at 332. It reasoned that the caller's ability to predict the suspect's future activity "demonstrated inside information--a special familiarity with [the suspect's] affairs." Id.  The Court explained that when "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." Id. at 331.

Having carefully reviewed the affidavit, the court is persuaded that there is sufficient corroboration to support the issuance of the search warrant.  The court notes initially that the tipster provided the following unusually specific details: (1) the identity and description of the occupants of the residence; and (2) the item that was allegedly stolen including the location and identity of the owner of the property.  The court further notes that law enforcement corroborated the following information: (1) the ownership of the residence and its use as a rental; (2) identified "Mike" as Michael Norris Schmidt, who had outstanding warrants; (3) discovered the report of a burglary by the person identified by the tipster; (4) the description of the stolen item; (5) reports of burglaries of several locations within a ten mile radius of the residence noted by the tipster; (6) citizen reports regarding activity by individuals associated with the residence during late night and early morning hours involving possible drug

offenses, fish and game violations and criminal trespassing; and
(7) observations of vehicles leaving and coming to the residence
during late evening and early morning hours.   The important
information provided by the tipster and confirmed by law
enforcement was the description of the stolen item.   The tipster
was able to specifically identify the stolen item and also indicate
from whom it had been stolen.   Law enforcement was then able to
confirm that the item had been stolen from that individual.
Although there is no information indicating that the tipster was
honest or reliable, great weight must be given to the tip because
of the tipster's explicit and detailed description of the stolen
item.

In sum, the court finds that the affidavit presented to the
magistrate contained sufficient probable cause to support the
issuance of a warrant.   The information provided by the anonymous
tipster was adequately corroborated through the work of law
enforcement.

Even if the court were to conclude that the search warrant was
not supported by probable cause, we would find that the evidence
seized from the defendant's residence need not be suppressed
because of the good faith exception to the exclusionary rule set
forth in United States v. Leon, 468 U.S. 897 (1984).   In Leon, the
Supreme Court held that the purpose of the exclusionary rule is to
deter police misconduct, and that "the suppression of evidence

6

obtained pursuant to a warrant should be ordered . . . only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." <u>Id</u>. at 916, 918. "Where an officer acting with objective good faith obtains a search warrant from a detached and neutral magistrate and the executing officers act within its scope, there is nothing to deter." <u>United States v. Nolan</u>, 199 F.3d 1180, 1184 (10th Cir. 1999) (citing <u>Leon</u>, 468 U.S. at 920-21).

"The Supreme Court recognizes four situations in which an officer would not have reasonable grounds for believing a warrant was properly issued. In these situations, the good-faith exception to the exclusionary rule would not apply." <u>United States v. Danhauer</u>, 229 F.3d 1002, 1007 (10th Cir. 2000) (citation omitted).

> First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth. Second, the exception does not apply when the issuing magistrate wholly abandons [his] judicial role. Third, the good-faith exception does not apply when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

<u>Id</u>.(citations and quotations omitted).

There is nothing before the court to suggest that <u>Leon</u> should not be applied here. The court is not persuaded that: (1) the affidavit contained false information or was so lacking in indicia of probable cause, (2) the magistrate abandoned his judicial role,

7

or (3) the warrant itself was facially deficient.  Accordingly, even if we were to conclude that the affidavit lacked probable cause, we would find that the good faith exception to the exclusionary rule precludes suppression of the evidence seized from the defendant's residence on November 27, 2007.  Thus, this motion shall be denied.

**MOTION TO SUPPRESS EVIDENCE SEIZED ON MARCH 30, 2008**

The defendant seeks to suppress the items seized from his vehicle on March 30, 2008 and any statements allegedly made by him at the time and subsequent to the search.  The defendant contends that the search of his vehicle after his arrest was unlawful.  The government asserts that the vehicle was properly searched as incident to the defendant's arrest.

Based upon the evidence presented at the hearing, the court now makes the following findings of fact and conclusions of law.

*Findings of Fact*

On March 30, 2008, Randy Benteman, a fish and game enforcement officer with the Kansas Department of Wildlife and Parks, was on patrol at the Council Grove Reservoir in Morris County, Kansas.  As he approached the Munkers Creek boat ramp, he noticed a black Chevrolet pickup truck parked nearby.  He saw an individual sitting on the bank behind a fishing pole.  He said to the individual, "Having any luck?"  This person, who was later identified as Mark Lawrence, indicated that he was not fishing and the pole belonged

8

to a friend.  He called out "Mike" several times, but no one answered.  Lawrence told Officer Benteman that he would take him to his friend.  Officer Benteman followed Lawrence for approximately 100 yards when they came upon another person who was sitting on a bucket, fishing.  This individual was identified as Michael Norris Schmidt.  He had a valid fishing license.  Officer Benteman gave him a citation for an unattended fishing pole.

Officer Benteman returned to his vehicle and ran a check on the truck and a wants/warrants search on Schmidt.  He learned that Schmidt had an active warrant for a worthless check in Pottawatomie County.  He also learned that the license tag sticker on the truck was expired.  He radioed for backup assistance and learned that Kansas Highway Trooper David Stahl was in the area.  He waited for assistance from Trooper Stahl.  Trooper Stahl arrived about five minutes later.

Trooper Stahl remained with Lawrence while Officer Benteman contacted Schmidt again.  Officer Benteman told Schmidt he was under arrest because of the outstanding warrant.  Officer Benteman did a quick pat down search and found nothing.  He handcuffed Schmidt and placed him in his patrol vehicle.  He learned that both Schmidt and Lawrence had suspended driver's licenses.  He then radioed for a tow truck for Schmidt's vehicle because the truck was in a remote area and initial information had indicated that the license tag had expired.  Officer Benteman was not certain that the

9

information concerning the expiration of the license tag sticker was correct because he had had some problems in the past with clerical errors on these matters.  However, at the time, that was the only information he had concerning the license tag sticker.

After Officer Benteman sought a tow truck, Trooper Stahl asked if he could begin an inventory search of the truck.  Kansas Highway Patrol policy required inventories of vehicles that were about to be impounded.  The purpose of the inventory search was to protect the owner of the vehicle and law enforcement personnel.  Officer Benteman told Trooper Stahl he could begin and Officer Benteman left in his vehicle with Schmidt.  Trooper Stahl began a cursory look into the truck.  He immediately found a plastic bag containing a white substance and a rifle.  The rifle was loaded.  He radioed Officer Benteman and told him to return to the site because he had found contraband.

Upon Schmidt's return, Trooper Stahl read him his Miranda rights.  He asked Schmidt if he had anything to say.  Schmidt indicated that he had forgotten that the bag was in his truck. Trooper Stahl asked Schmidt for his driver's license.  When Schmidt produced it, Trooper Stahl found a plastic bag of what appeared to be methamphetamine.  Trooper Stahl then returned to the truck to search it more thoroughly.  While Trooper Stahl continued his search, Schmidt asked for a cigarette.  Schmidt was still handcuffed.  Officer Benteman reached into Schmidt's pants pocket

10

and found some cigarettes. As he opened the cigarettes, he noticed that one of the cigarettes looked like a hand-rolled marijuana cigarette. Schmidt told Officer Benteman to get his lighter which was in another pocket. Officer Bentemen discovered a bag of marijuana in that pocket in addition to the lighter.

Trooper Stahl returned from the truck with a partially smoked marijuana cigarette. A thorough search of the defendant at that time revealed another plastic bag of what appeared to be methamphetamine. Trooper Stahl returned to the truck and continued to search. He found a bag containing a needle with a substance still in the syringe. He also found some cotton balls. He believed these materials indicated that the occupants had been shooting something into their veins. Trooper Stahl then transported Schmidt to the Morris County jail. Officer Benteman waited for the tow truck to arrive. Lawrence had been asked if he could contact someone to pick him up. He said he could and, after contacting someone, he waited to be picked up.

At the jail, Trooper Stahl reminded Schmidt of his rights. He provided Schmidt with a form to provide his side of the story. Schmidt admitted that the drugs belonged to him. He indicated that he had simply forgotten he had them with him. He informed Trooper Stahl that he purchased the methamphetamine in Missouri.

*Conclusions of Law*

The Fourth Amendment prohibits unreasonable searches, but it

is well established that, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." New York v. Belton, 453 U.S. 454, 460 (1981). An officer's right to conduct such a search is based on "the need [of police officers] to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape and the need to prevent the concealment or destruction of evidence." Id. at 457 (internal quotation marks omitted).

In 2004, the Supreme Court further defined when officers may search an automobile incident to a lawful arrest. See Thornton v. United States, 541 U.S. 615 (2004). In Thornton, the officer saw the defendant get out of his car, then approached the defendant on foot and asked for his driver's license. Id. at 618. The officer patted down the defendant and found marijuana and cocaine in his pockets. Id. The officer arrested the defendant, handcuffed him, and placed him in the backseat of his patrol car. Id. Thereafter, the officer searched the defendant's car and found a handgun under the driver's seat. Id. The Fifth Circuit found the search to be reasonable under Belton because the defendant's car was in his immediate control. Id. at 619. The Supreme Court affirmed, holding "[s]o long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here, officers may search that vehicle incident to arrest." Id. at 623-24.

The Tenth Circuit, in light of <u>Belton</u> and <u>Thornton</u>, has held that a warrantless search can be a lawful incident of an arrest where the arrestee is detained on-scene at the time of the search. See <u>United States v. Brothers</u>, 438 F.3d 1068, 1070, 1073 (10th Cir.) (search conducted "two to three minutes after the defendant had been handcuffed and his pockets searched" was "valid as a search incident to a custodial arrest"), <u>cert. denied</u>, 548 U.S. 918 (2006); <u>see</u> <u>also</u> <u>United States v. Martinez</u>, 30 Fed.Appx. 900, 903-04 (10th Cir. 2002) (unpublished) (search conducted after the defendant was arrested and placed in the back of the police car was valid as a search incident to arrest).  However, the Tenth Circuit has not upheld a search as a lawful incident of an arrest where the arrestee is in a patrol car en route to the police station at the time the search begins.  <u>United States v. Dennison</u>, 410 F.3d 1203, 1209 (10th Cir.), <u>cert. denied</u>, 546 U.S. 955 (2005); <u>United States v. Lugo</u>, 978 F.2d 631, 635 (10th Cir. 1992).

In accord with the law of the Tenth Circuit, we must find that the initial search of defendant's truck by Trooper Stahl was not lawful as incident to the defendant's arrest because the defendant was already in a patrol car and headed for jail when the search began.  Accordingly, the government's initial argument must fail.

The court next turns to the issue of whether Trooper Stahl's initial search of the defendant's truck was proper as an inventory search.  A routine inventory search of a lawfully impounded vehicle

is a well-established exception to the Fourth Amendment's warrant requirement. <u>South Dakota v. Opperman</u>, 428 U.S. 364, 372, (1976). An impoundment is reasonable when the driver of the vehicle cannot lawfully operate the vehicle and there is no third person who can immediately take custody of the car. <u>United States v. Haro Salcedo</u>, 107 F.3d 769, 771 (10th Cir. 1997); <u>see also United States v. Johnson</u>, 734 F.2d 503, 505 (10th Cir. 1984) (an impoundment is justified when police are concerned about vandalism and the owner is clearly unable to drive).

Kansas Highway Patrol policy required that a vehicle be inventoried if it was about to be impounded. Such inventories are conducted to protect both the owner of the vehicle and law enforcement.

Given the circumstances, the court finds that law enforcement made the appropriate decision to impound the truck. The court does not find that the officers acted unlawfully in refusing to seek someone else to remove the truck from the scene. Since Lawrence's driver's license was suspended, there was no one to immediately take custody of the truck. More importantly, at that time Officer Benteman had been told that the license tag sticker on the truck was invalid. In light of that fact, no one could properly drive the vehicle from where it was parked.

Trooper Stahl conducted the initial search pursuant to the inventory policy of the Kansas Highway Patrol. The court finds

14

this search was proper as an inventory search.  After Trooper Stahl discovered the rifle and plastic bag containing what appeared to be methamphetamine, he properly sought to have the defendant returned to the scene, and he read the defendant the Miranda warning.  His subsequent searches were proper as incident to his arrest on the drug charge.  The court finds that all of the items taken from defendant's truck were lawfully discovered.  The defendant's subsequent statements were also properly taken.  Accordingly, the court finds no merit to the defendant's motion.  This motion to suppress shall be denied.

**MOTION TO ELECT**

The defendant seeks to force the government to elect between certain charges in this case.  The defendant notes that Counts 1, 4 and 7 charge him with possessing firearms after having been convicted of a felony.  Counts 2, 5, and 8 charge him with possessing the same firearms on the same date while being an unlawful user of controlled substances.  The defendant contends that the government should be forced to elect which counts they are prosecuting because Counts 1 and 2, Counts 4 and 5, and Counts 7 and 8 are multiplicitous.  The government counters that the charges are not multiplicitous or prejudicial to the defendant.  The government contends that the law allows them to charge the crimes in this manner, but the defendant can only be convicted and sentenced on one of the crimes.

15

The Tenth Circuit has held that the charge for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and the charge for being an unlawful user of controlled substances in possession of a firearm in violation of 18 U.S.C. § 922(g)(3) are "multiplicitous counts" and that a defendant "can only be convicted and punished for one of the § 922(g) counts." United States v. Johnson, 130 F.3d 1420, 1426 (10th Cir. 1997), cert. denied, 525 U.S. 829 (1998). It is within the trial court's discretion "to require the prosecution to elect between multiplicitous counts before trial." Id. The presentation of multiplicitous counts presents a risk of prejudice to the defendant:

> The risk of a trial court not requiring pretrial election is that it may falsely suggest to a jury that a defendant has committed not one but several crimes. Once such a message is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue, and will reach a compromise verdict or assume the defendant is guilty on at least some of the charges.

Johnson, 130 F.3d at 1426 (citations and quotations omitted).

In United States v. Harwell, 426 F.Supp.2d 1189 (D.Kan. 2006), Judge Crow denied a defendant's motion to dismiss and declined to require the government to elect between the multiplicitous counts of possession of a firearm by a felon and possession of firearm by a user of controlled substances. The court stated:

> The risk of false impressions here does not appear to be great or unfairly prejudicial to the defendant, as the entire case involves simply the defendant's alleged

16

possession of two weapons on a single day, and the indictment plainly identifies which counts are brought as alternative disqualifying statutes. Just as in Johnson, there is the possibility the jury may acquit the defendant Harwell of one count and convict on the alternative count. The court will not require the government to elect between the alternative counts.

Harwell, 426 F.Supp.2d at 1192.

Having carefully considered the circumstances here, the court has determined that the defendant's motion to elect should be granted. The court finds the potential for prejudice to the defendant much greater in this case than in Harwell. The indictment is this case charges three separate incidents involving different firearms. The increased number of counts and weapons provide a greater opportunity of prejudice. Moreover, the court notes that the counts in this indictment are not charged in the alternative as were the counts in the indictment in Harwell. This distinction also provides the opportunity for confusion by the jury and prejudice to the defendant. In sum, the court shall require the government to elect which charges it intends to present to the jury. The government shall do so within ten days of the date of this order.

**IT IS THEREFORE ORDERED** that defendant's motion to suppress evidence seized on November 27, 2007 (Doc. # 10) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion to suppress evidence seized on March 30, 2008 (Doc. # 12) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion to elect (Doc.

17

# 14) be hereby granted.  The government shall be required to elect between Counts 1 and 2, Counts 4 and 5, and Counts 7 and 8.  The government shall do so within ten days of the date of this memorandum and order.

**IT IS SO ORDERED.**

Dated this 29th day of September, 2008 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge